FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 00 AUG 17 PM 4: 10
SOUTHERN DIVISION

J.S. DISTRICT COURT
N.D. OF ALABAMA

W.R. HUFF ASSET MANAGEMENT CO., )
L.L.C.,                          )
                                 )
     Plaintiff,                  )
                                 )      Civil Action No.
v.                               )
                                 )      00-AR-1630-S
                                 )
BT SECURITIES CORPORATION,       )
et al.,                          )
                                 )
     Defendants.                 )

ENTERED
AUG 17 2000

**MEMORANDUM OPINION**

Before this court is plaintiff's motion to remand. Plaintiff, W.R. Huff Asset Management Co., L.L.C. ("Huff"), originally filed this action in state court under various state law theories. Essentially, Huff alleges that defendants engaged in fraud and misrepresentation in connection with Huff's purchase of certain securities. On June 13, 2000, defendants filed a notice of removal based upon alleged preemption of the state law claims by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). On June 19, 2000 defendants filed a motion to dismiss Huff's complaint. On June 20, 2000, Huff filed a motion to remand. This court heard oral argument on both motions at its regular motion docket on June 23, 2000. Because both sides wanted to fully brief the issues, this court provided them a briefing schedule. After



all the briefs were filed, lead counsel for Huff requested further oral argument.  Because counsel had not been available for the June 23, 2000 motion docket as a result of surgery, and because the questions in this case are both novel and important, this court again heard oral argument on August 11, 2000.

For the reasons set forth in the following opinion, the court will deny Huff's motion to remand.  However, as explained in the order accompanying this memorandum opinion, the court will allow plaintiff an opportunity to seek an appeal of the denial of its motion to remand under 28 U.S.C. § 1292(b).  The court will not rule on defendants' motion to dismiss until a response is obtained from the Eleventh Circuit on this courts' removal jurisdiction.  This court would prefer not to rule dispositively until it knows whether or not it has jurisdiction.

### General Overview of SLUSA

Congress passed the Private Securities Litigation Reform Act ("PSLRA") in 1995.  The goal of the PSLRA was to establish more stringent procedural requirements for private securities litigation in federal courts.  Three years later, Congress passed SLUSA, Pub. L. No. 105-353, 112 Stat. 3227 (1998), after determining that plaintiffs' attorneys were attempting to circumvent the PSLRA's tougher requirements by filing securities lawsuits under various

state law theories in the state courts. SLUSA was expressly designed to completely preempt all "covered class actions" (as defined by SLUSA itself and not Rule 23, Fed. R. Civ. P.) filed in state courts and in which fraud or misrepresentation is alleged under state law in connection with the sale of a "covered security."

SLUSA states: "Any covered class action brought in any State court, involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)." 112 Stat. at 3228. Defendants argue that this language makes it clear that SLUSA preempts Huff's state law claims. Huff argues that SLUSA does not preempt Huff's state law claims and, accordingly, that this court does not have jurisdiction. Huff gives two reasons for this: (1) that because the alleged misrepresentations and fraud occurred **before** SLUSA was passed, SLUSA does not apply to pre-enactment conduct; and (2) that even if SLUSA applies retroactively, this court does not have jurisdiction because the securities in question were not "covered securities" as defined by SLUSA.

### Factual Background and Procedural History

Huff is a money manager and investment advisor for numerous

clients. After the common stock of Bruno's, Inc., was delisted in November 1995, Huff began purchasing certain Senior Subordinated Notes for its clients. These Notes were issued on August 18, 1995 in connection with the takeover of Bruno's by Kohlberg Kravis Roberts & Co.("KKR") through a leveraged recapitalization. Huff alleges that defendants made material misstatements in connection with the sale of the Notes, and that defendants continued to make material misstatements and omissions in various periodic public filings until Bruno's declared bankruptcy on February 2, 1998.

On April 28, 2000, Huff filed a complaint in the Circuit Court of Jefferson County, making claims that Huff says arise solely under Alabama statutory and common law, including claims for fraudulent suppression, fraudulent and reckless misrepresentation, fraudulent and reckless deceit, negligent misrepresentation, civil conspiracy, and violations of the Alabama Securities Act.[1]

On June 13, 2000, defendants removed the case to this court, asserting that plaintiff's state law claims are preempted by Section 16(c) of the Securities Act and Section 28(f)(2) of the Securities Exchange Act, as amended by SLUSA.

---

[1] Huff asserts that it did not discover the fraud until October of 1999. Defendant does not dispute this assertion, so there is no statute of limitations problem.

### **Legal Questions and Analysis**

<u>Whether SLUSA Applies Retroactively</u>

Huff cites the famous <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 114 S.Ct. 1483 (1994), for the proposition that SLUSA does not apply to Huff's case because the complained of conduct occurred before SLUSA was passed, and therefore, that SLUSA cannot apply retroactively. This court respectfully disagrees. The precise holding of <u>Landgraf</u> is that absent a clear Congressional statement to the contrary, a statute is presumed **not** to apply retroactively to **cases that were pending** prior to the statute's enactment. In <u>Landgraf</u>, the Court made clear that its review was limited to the question of whether the 1991 amendments to the Civil Rights Act applied retroactively to **cases pending** when the amendments became law. <u>Landgraf</u> at 249-250, 1489. The Court concluded that the amendments should not be applied retroactively to **pending cases**. It pointed out that a prior version of the bill contained a provision that would have applied the new amendments to cases arising before its enactment, and this version was expressly rejected. Thus, the "narrow holding" of <u>Landgraf</u> is that the 1991 amendments did not apply to **pending cases** because there was no clear Congressional statement to the contrary.

5

Despite Landgraf's express holding, Huff argues that Landgraf should be read to prohibit the retroactive application of statutes to **conduct** that predated the statute. Huff's argument is not completely without merit. This court acknowledges that in Landgraf, the Supreme Court repeatedly refers to the law as it existed at the time of the discriminatory **"conduct."** At one point, the Court says, "Thus the controlling question is whether the Court of Appeals should have applied the law in effect at the time the discriminatory conduct occurred, or at the time of its decision in 1992." Landgraf at 250, 1489. As a result, Huff can make a credible argument that the "broad holding" of Landgraf is that absent a clear Congressional statement to the contrary, statutes are presumed not to apply retroactively to **conduct** that occurred before the statute's enactment.

However, ultimately, this court finds that SLUSA does apply to this case for the following reasons. SLUSA itself states the following: "APPLICABILITY: The amendments made by this section shall not affect or apply to any action commenced before and pending on the date of enactment of this Act." 112 Stat. at 3233. This provision is a clear Congressional statement that SLUSA will **not** apply to any **pending cases**. The logical, if negative,

implication of this applicability provision is that SLUSA **will** apply to any **cases** filed **after** the effective date of the Act, regardless of when the underlying **conduct** took place.² A case filed one day after the effective date of SLUSA would necessarily involve conduct that preceded the enactment. Therefore, based on the text of the statute, SLUSA applies to this case. Furthermore, defendants cite to several cases in which the PLSRA was applied to cases filed after its enactment although the alleged conduct occurred before the PLSRA was enacted, and the applicability language in SLUSA is identical to the language in the PLSRA. For example, in <u>Zeid v. Kimberley</u>, 973 F.Supp. 910 (N.D. Cal. 1997), *reversed on other grounds*, the plaintiff argued that the PLSRA did not apply to pre-act conduct. In rejecting that argument, the court stated:

> The language [of the reform Act] means exactly what it says. The amendments contained in the Reform Act do not apply retroactively to pending actions. Rather, they apply prospectively to all actions . . . that are commenced after December 22, 1995. Since Plaintiffs filed their action on February 23, 1996, two months after

---

² At oral argument, plaintiff's counsel suggested that because a **negative** implication must be made, the language is, by definition, ambiguous. The court finds this position untenable, and a simple example illustrates the point: If a mother were to tell her child, "You may not go outside before 2:00," the logical implication of that statement, although a **negative** implication, is that the child would be allowed to go outside after 2:00. No one would seriously contend that the mother's statement is ambiguous as to what time the child was allowed to go outside.

the effective date, the Reform Act applied to their suit. <u>Zeid</u> at 914-915. Although not binding, the court finds <u>Zeid</u> persuasive.

Also, the Eleventh Circuit has stated, "<u>Landgraf v. USI Film Products</u> . . . provides the analytical framework for determining whether newly enacted statutory provisions are applicable to **pending cases.**" <u>Hunter v. United States</u>, 101 F.3d 1565, 1569 (11th Cir. 1996)(en banc)(emphasis added). This statement is in accord with this court's conclusion, *supra,* that the **precise** holding of <u>Landgraf</u> is limited to **pending cases**.

Furthermore, even though some language in <u>Landgraf</u> refers to **conduct**, the case before this court is different from the <u>Landgraf</u> case in several important respects. For example, in <u>Landgraf</u>, **both** the conduct and the filing of the suit occurred before the act was passed. And, most importantly, the Court's rationale for the presumption against retroactivity as to pending cases was that it is unfair to attach new liabilities to **conduct** that, **at the time**, was not subject to those liabilities. So, as it is in its Ex Post Facto jurisprudence, the Court was concerned about due process- namely, notice and the opportunity to conform one's conduct before new liabilities or punishments attach to that conduct. <u>See</u>

8

Landgraf at 265-268, 1497-1498. But in the case before this court, that concern is not present. Defendants are not arguing that SLUSA should not apply to them because SLUSA unfairly and without notice attaches new liabilities to pre-enactment conduct.

In addition to the text of SLUSA, the purpose of SLUSA strongly supports its application to this case. Because SLUSA's purpose was not to add new liabilities to defendants' conduct in securities litigation, but to remedy apparent attempts by plaintiffs to circumvent the requirements of the PLSRA by filing suits under state laws in state courts, it would not make sense to decide the retroactivity question under SLUSA in favor of protecting plaintiffs' rights to bring state law claims in state courts.

Finally, Huff argues that the retroactive application of SLUSA will impair its rights that existed at the time of the alleged conduct. And Landgraf does discuss whether rights would be impaired by the retroactive application of a statute. However, Landgraf makes it clear that a court only reaches the question of whether rights were impaired if there is no clear Congressional statement regarding retroactivity, and this court has determined that there **is** a clear Congressional statement in SLUSA. Furthermore, even if the language of SLUSA were ambiguous, this

9

court agrees with defendants that there is no impairment of the rights of Huff or of the putative class it seeks to represent, because they are still free under SLUSA to bring individual actions in state court under any and all of Huff's present state law theories. The only thing they could not do is file a **class action** in state court. For the foregoing reasons, this court finds that SLUSA does apply "retroactively" to Huff's claims.

This court is not particularly enamored of the concept of federal preemption of traditional state law remedies. For instance, this court would be delighted if it is determined by a binding appellate court that Judge Holmes is correct in <u>Lewis v. Aetna U.S. Healthcare, Inc.</u>, 78 F. Supp. 2d 1202 (N.D. Okla. 1999), so that it will be harder for insurers to tow their frauds into the federal harbor provided by ERISA preemption for the purpose of skuttling them. But, if Congress clearly decrees preemption in a particular area of controversy and has a constitutional basis for its enactment, preemption is the order of the day.

### Whether the Securities at Issue Are Covered Securities

Huff argues that even if there is no retroactivity problem, SLUSA still does not apply presumptively to this case because the Notes at issue were not "covered securities" as defined by SLUSA. Huff asserts that the securities at issue could not have been

"covered securities" because in 1995, when some of the alleged fraud took place, there was no existing definition of a "covered security." Huff points out that § 18 of the Securities Act of 1993 did not even define "covered security" until 1996 when the National Securities Markets Improvement Act of 1996 was enacted. However, the court finds that this argument is not plausible for the reasons that follow.

A covered security was originally defined as follows: "A security is a covered security if such security is- (A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed on the National Market System of the NASDAQ Stock Market . . . ." 15 U.S.C. §77(r)(b)(1). In 1998, SLUSA amended the definition of a "covered security" to add "authorized for listing" on the NASDAQ instead of just "listed" on the NASDAQ. SLUSA also states: "(3) COVERED SECURITY- The term 'covered security' means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) **at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred** . . ." 112 Stat. at 3230 (emphasis added).

This court has already found that SLUSA applies to this case, and it is only logical to conclude that any definitions contained

11

within SLUSA must also apply. Accordingly, Huff's argument that there was no such thing as a "covered security" at the time of the alleged misrepresentations is erroneous, that is, unless this court's conclusion that SLUSA applies is erroneous. SLUSA states that the security must have been a covered security at the time during which the alleged fraud occurred, and (for the purposes of this case), SLUSA defines a "covered security" as a security that is either listed **or** authorized for listing on the NASDAQ. Therefore, the court must look to the timing of the alleged misrepresentations to determine whether the securities at issue were either listed or authorized for listing on the NASDAQ at the time of the misrepresentation.

> Huff's complaint alleges:
>
> The Underwriter Defendants solicited [Huff] to purchase the Notes in early August 1995. The Underwriter Defendants engaged in solicitations by distributing a preliminary 'red herring' Prospectus to investment managers and analysts at Huff in early August 1995, and by inviting Huff to attend a road show in New York City. . . . Also, in early August 1995 and before the final Prospectus, dated August 10, 1995, the Underwriter Defendants and KKR solicited Huff by arranging a one-on-one meeting at Huff's Offices in Morristown, New Jersey.

(Compl. ¶ 2.) Huff's complaint also states that "Huff began its purchases of the Notes in November 1995, approximately three months after the Leveraged Recapitalization, and in reliance on the

Prospectus and other disclosures made by Defendants." (Compl. ¶ 3.) It is clear from this that the primary alleged misrepresentations occurred on or before August 10, 1995, because it is the prospectus and the representations allegedly made at the meeting before the prospectus was issued which Huff alleges it relied on in deciding to purchase the Notes in the first place.

Under SLUSA, Bruno's equity and debt instruments were in fact covered securities on or before August 10, 1995, because prior to August 21, 1995, Bruno's was actually listed on the NASDAQ.[3] Because the statute says that the appropriate time frame is the time when the material omissions or fraudulent statements were made, it is clear that much of the alleged fraud occurred when the stock was still listed on NASDAQ. Therefore, any alleged fraud that occurred before the delisting concerned "covered securities."

Huff makes the following additional argument: **after** the delisting, the stock was no longer a "covered security," so any alleged fraud that occurred after the delisting is not covered by

---

[3] Plaintiff states that the delisting date was August 18, 1995. August 18 was a Friday and August 21 was a Monday. Given the fact that the stock market closes on Friday and opens on Monday, the court is not sure whether the stock was technically delisted at the close of business on Friday or the start of business on Monday. Regardless, this difference is not material to the court's determination of whether the stock at issue was a covered security because it is undisputed, based on Huff's complaint, that many if not most of the alleged material misrepresentations occurred prior to August 18.

SLUSA. However, even if Huff is correct that some of the alleged fraud occurred after the securities were no longer even "authorized for listing,"[4] SLUSA still applies to this case because SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private parties alleging an untrue statement or omission of material fact in connection with the purchase or sale of a covered security.

112 Stat. at 3228. The statute does not say that **all** allegations in a "covered class action" must involve "covered securities." It says that a class action may not be maintained in State or Federal court if the party is alleging "an untrue statement or omission of material fact in connection with the purchase or sale of a covered security." That is the case here. While it is true that some of the allegations of fraud occurred after the stock was delisted, many of them occurred while the stock was a "covered security" by virtue of being listed on the NASDAQ. Therefore, the **action** alleges fraud in connection with the purchase or sale of a covered security, and therefore, SLUSA applies.

---

[4] Because the court finds that SLUSA applies **regardless** of whether, after the delisting, the Notes continued to be "authorized for listing," the court expresses no opinion as to the question of whether the Notes were, in fact, still "authorized for listing." Huff remains free, of course to make that argument to the Eleventh Circuit at an appropriate time.

Huff's Other Arguments

In its brief, Huff argues that SLUSA does not apply because this action was not a covered class action and that SLUSA violates the Equal Protection Clause. Although Huff essentially conceded both of these arguments during oral argument, this court will nevertheless address them briefly in the interest of being comprehensive, and because of the promise of an interlocutory appeal by Huff from any denial of Huff's motion to remand.

Whether This Action is a Covered Class Action

SLUSA does not use Rule 23, Fed. R. Civ. P., to define a "class action." Rather, it has its own definitions. For example, section (f)(2)(A) defines a covered class action as

> (i) any single lawsuit in which–
> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; **or**
> **(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members** (emphasis added).

112 Stat. at 3229.

In its brief, Huff argues that it is not covered by

(f)(2)(A)(i)(I) because the class contains less than 50 persons or prospective class members, and Huff further offers to amend its complaint to make it clear that it is representing less than 50 persons or members. However, regardless of whether Huff is bringing this action on behalf of 49 clients or 200 clients, this action is still a "covered class action" because it meets the alternative definition of a covered class action as outlined by subsection II.

As defendants point out, Huff's complaint states that it is "bringing these claims in its individual capacity as a person defrauded by Defendants," (compl. ¶ 15,) and that it is "bringing this lawsuit on behalf of its beneficial owner clients." (Compl. ¶ 14.) Thus, by the language of Huff's own complaint this case is clearly a "covered class action" under subsection II,[5] and to the extent that Huff has not conceded the "covered class action" argument, that argument fails.

Huff could have avoided this removal if it had been willing to be the sole plaintiff.

---

[5] Huff's ancillary argument, that no common issues of law and fact predominate, is not credible based on the language of its own complaint and on the facts of this case.

16

Equal Protection

In portions of its briefs, Huff appears to be arguing that SLUSA violates the Equal Protection Clause because investors for whom it would be cost prohibitive to bring an **individual** lawsuit in state court are precluded from pursuing their state law claims, period, inasmuch as they are forced to be a part of a federal class that can sue only under SLUSA in federal court. But then Huff also states:

> The right of a defrauded small investor to bring a **class action** asserting claims based upon state law for common law fraud or deceit, or for violations of the state blue sky law act, is a fundamental right of access to the courts, requiring close scrutiny of any statute depriving some investors (but not others) of access to the courts.

(Huff's Mem. in Support of Mot. to Remand at 25) (emphasis added). Huff's argument, if the court understands it, is untenable for several reasons. First, there is no fundamental right to bring a state securities lawsuit on behalf of others, and this court cannot believe that the current United States Supreme Court would hold such. Second, individual investors are not precluded from bringing individual lawsuits in state court, so they are not being denied access to **a** court of law. The fact that it costs money to go to court is not a reason for holding that SLUSA violates the Equal Protection Clause. Finally, Huff's argument that SLUSA's

17

preemption of state law claims violates a fundamental right to bring a claim under state law could be made about **every** federal law that completely preempts state law, and Huff has not cited to any cases in which the Supreme Court has held that a federal law, solely by virtue of its preemptive effect, violates the Equal Protection clause.[6]

Because there is no fundamental right involved, SLUSA only has to pass the "rational basis" test, and this court can see no reason why it does not. The wisdom of Congress is not a matter for this judge to judge. Huff does attempt to argue that there is no rational basis for allowing an action in state court if there are 50 or fewer members of the class while preempting the same action if there are more than 50 members. However, once again, Huff misses the alternative definition of a class action under SLUSA and furthermore, this court agrees with defendants that there is nothing inherently irrational about the 51 plaintiff minimum. Class actions under Rule 23 involve a determination of numerosity, which is always to some degree, arbitrary. Likewise, Congress picked a number here. But an **arbitrary** selection of particular

---

[6] Although there is no indication that Huff is arguing that small investors are a suspect class, that argument would certainly fail under the Supreme Court's Equal Protection jurisprudence.

number does not equal an **irrational** selection. As defendants put it, "This kind of legislative line-drawing is commonplace and constitutionally sound." (Defs.' Supplemental Opp'n to Pl.'s Mot. to Remand at 22.) Therefore, Huff's Equal Protection argument, to the extent that Huff has not conceded it, fails.

Lastly, if there were a serious Constitutional attack on SLUSA itself, it would be necessary to notify the Solicitor General and to obtain from him the position of the United States on the constitutional question.

### Conclusion

A separate and appropriate order will be entered.

DONE this 17th day of August, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE