IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

W.R. HUFF ASSET MANAGEMENT CO, )
L.L.C., etc., )
 )
    Plaintiff, ) CIVIL ACTION NO.
 )
v. ) 00-AR-1630-S
 )
BT SECURITIES CORPORATION, )
et al., )
 )
    Defendants. )

ENTERED
MAY - 2 2001

### MEMORANDUM OPINION

### Procedural Background

Plaintiff, W.R. Huff Asset Management Co., L.L.C. ("Huff"), is an investment management company. It originally filed this action in state court for itself and on behalf of certain of its unnamed owner-clients. It proceeded under various state law theories. It alleged that defendants engaged in fraud and misrepresentation in connection with the sale of securities. It carefully avoided the slightest hint of reliance upon federal law. Defendants removed the case to this court, alleging super-preemption of Huff's state law claims by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA" or "the Act"), Pub. L. No. 105-353, 112 Stat. 3227 (1998). The "well-pleaded complaint" rule does not prevent federal question removal under 28 U.S.C. § 1331 **if** federal law so

1



pervasively covers the field that a purported state cause of action cannot exist without, in reality, being nothing if not a federal claim. The provisions relevant to defendants' preemption theory are found in Title I of SLUSA, which amends Section 16 of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77p, and Section 28 of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78bb. Because § 101(a) of SLUSA, which amends the Securities Act, is materially identical to § 101(b), which amends the Exchange Act, it provides the means by which a federal court can ascertain whether it has jurisdiction.

In its opinion of August 17, 2000, this court concluded that SLUSA was Huff's exclusive avenue for relief, found the existence of a federal question, and therefore denied Huff's motion to remand. However, the court expressly encouraged Huff to request the Eleventh Circuit to accept an appeal under 28 U.S.C. § 1292(b). This court reasoned that an interlocutory expression by the Eleventh Circuit on this court's subject matter jurisdiction would advance the ultimate termination of this litigation and would minimize the likelihood of a waste of judicial resources. The Eleventh Circuit rejected Huff's attempt at an appeal. This provoked the three motions by Huff now pending in this court: 1) motion to reconsider the August 17 opinion, 2) alternative motion

to sever and remand the case as to one defendant, Deloitte & Touche, LLP ("Deloitte"), and 3) alternative motion for leave to amend the complaint. Defendants have filed a motion to dismiss and their own motion to amend the opinion of August 17.

The Eleventh Circuit's decision not to decide the question of jurisdiction constitutes a reminder to this court of its obligation under 28 U.S.C. § 1447(c) to constantly examine and reexamine its own jurisdiction. This obligation is ever present, without regard to Huff's motion for reconsideration. Simply, § 1447(c) requires a federal court to remand an action removed to it if subject matter jurisdiction is lacking, unless and until that lack of jurisdiction only appears after a final judgment has been entered. Accordingly, this court takes a second look at its jurisdiction. For reasons the court will now elaborate, it finds that it does not have jurisdiction. In other words, a new look is about to result in a different outcome.

If this court did have jurisdiction, the case would be over, because defendants' argument for removal jurisdiction is based on 15 U.S.C. § 77p(c), which is identical to, and goes hand in hand with, 15 U.S.C. § 77p(b), which would require dismissal. If the former is satisfied, so is the latter. Because the court now finds that SLUSA does not apply because the Act does not apply

3

retroactively, this court cannot do anything except to remand the case. It remains to be seen what the Circuit Court of Jefferson County, Alabama, the forum properly chosen by Huff, will do with the case. This court concentrates only upon the obligation created by 28 U.S.C. § 1447(c), which is unambiguous, even if, from time to time, it calls for a change of mind.

## Discussion

If SLUSA is not to be applied retroactively to conduct predating its enactment, SLUSA does not preempt Huff's state law claims, and there is no federal question upon which defendants can invoke the removal jurisdiction of this court.

The court takes a deeper look into whether applying SLUSA to Huff's complaint would be "retrospective", so as to implicate the *Landgraf* retroactivity analysis, as elaborated in subsequent Supreme Court decisions. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505 (1994); *see Martin v. Hadix*, 527 U.S. 343, 119 S.Ct. 1998 (1999); *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, (1997). Huff points out that all of defendants' acts and omissions that form the basis of

4

claimed liability occurred prior to SLUSA's enactment on November 3, 1998. Huff did not file its complaint until April 28, 2000. In other words, although the case was not filed until after SLUSA became the law of the land, the conduct complained of predated the enactment. On the basis of references to "pending cases" in *Landgraf* and some of its progeny, see, e.g., *Martin*, 527 U.S. at 352, 119 S.Ct. 1998; *Landgraf*, 511 U.S. at 249-50, 114 S.Ct. 1483; *Hunter v. United States*, 101 F.3d 1565, 1569 (11th Cir. 1996) (en banc), the argument is made that the protection recognized by *Landgraf* against unfair retrospective application should be limited to those actions in which the complaint was filed prior to enactment of the law proscribing the conduct. However, upon reflection, the court concludes that the *Landgraf* limitation cannot be reconciled with *Hughes Aircraft*, in which the plaintiff filed suit in 1989, but premised liability on a 1986 amendment to the Fair Claims Act, saying that it should be applied to the defendant's pre-1986 conduct. See *Hughes Aircraft*, 520 U.S. at 941-45, 117 S.Ct. 1871. Even though the *Landgraf* complaint was pending at the time of the statutory enactment at issue there, the unanimous *Hughes Aircraft* Court employed the *Landgraf* analysis, without commenting on the obvious feature that distinguishes the

two cases, and concluded that the 1986 amendment could not be applied retroactively. *See Hughes Aircraft*, 520 U.S. at 945-51, 117 S.Ct. 1871. In so doing, the Supreme Court reaffirmed the fact that *Landgraf* focuses on **conduct** as the central fact for determining retroactivity. *See, e.g., Landgraf*, 511 U.S. at 250, 114 S.Ct. 1483. Moreover, given the purpose for a presumption against retroactivity, as discussed in *Landgraf*, 511 U.S. at 265-73, 114 S.Ct. 1483, there is nothing within the logic of *Landgraf* that can explain why a court should not apply that presumption equally to a case **pending** as to a case **not pending** on the date of a statute's enactment, as long as pre-enactment **conduct** forms the basis for liability. No matter which comes first, the enactment or the filing, the application of a statute may be precluded on the basis of impermissible retroactivity, either as a matter of statutory construction or as a matter of the constitutional guarantee of "due process". Huff's complaint raises the overarching concern over SLUSA retroactivity when it relies upon defendants' actionable **conduct** that occurred prior to SLUSA's enactment.

In order to decide whether SLUSA covers defendants' conduct, the first question to be answered is whether Congress expressly

6

described the statute's temporal reach. *See Martin*, 527 U.S. at 352, 119 S.Ct. 1998 (citing *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483). A court must follow explicit and unambiguous congressional instruction, unless the clear intent is overridden by some constitutional prohibition. *See Landgraf*, 511 U.S. at 266-72, 280, 114 S.Ct. 1483. If there is no statutory prescription, the court must determine whether retrospective application would have an impermissible "retroactive effect". *See id.* SLUSA's applicability provision, which covers § 101(a) and § 101(b), states: "The amendments made by this section shall not affect or apply to any action commenced before and pending on the date of enactment of this Act." § 101(c), 112 Stat. at 3233. Subsection 101(c), then, amounts to an express **proscription** that forbids the application of SLUSA to any case pending on the day SLUSA came into force. However, to the degree it establishes the Act's temporal reach, such a **prescription** must be **inferred**. It is certainly not express except as to pending cases. Based on the statutory maxim that the expression of one thing is the exclusion of another, the inference can be drawn from the language of SLUSA's applicability provision that the Act does apply to all cases brought after enactment, whether or not based on pre-enactment conduct. Because it cannot

7

be said that § 101(c) expressly prescribes the temporal reach of SLUSA, it falls short of the standard established by the Supreme Court for accomplishing retroactivity as to pre-enactment conduct by unequivocal statutory language.

This court's ultimate finding of no retroactivity is not based just upon the definitional distinction occasioned by the one-letter difference between "prescribe" and "proscribe". The Supreme Court's discussion of what the "clear statement rule" means in practice leaves no doubt that § 101(c) fails as a purported manifestation of congressional intent for retrospective application in this case. The potential for elementary unfairness that plagues retrospective application has long justified the Supreme Court's stance that Congress, if retroactivity is to be achieved, must show that it "has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness" by providing a loud and clear signal that a statute takes effect from a time anterior to its passage. *Landgraf*, 511 U.S. at 268, 114 S.Ct. 1483; *see Lindh*, 521 U.S. at 325-26, 328, n.4, 117 S.Ct. 2059. The *Landgraf* Court cited an example of a congressional expression that would have passed retroactive muster: "[T]he new provisions **shall** apply to all proceedings pending on **or commenced after the date of enactment of**

8

**this Act.**" 511 U.S. at 260, 114 S.Ct. 1483 (emphasis added; internal quotation marks omitted); *see Martin*, 527 U.S. at 354-55, 117 S.Ct. 1998 (quoting *Landgraf*'s illustration). The words of § 101(c), namely, "The amendments made by this section **shall not** affect or apply to any action commenced before and pending on the date of enactment of this Act" (emphasis added), do not come close to taking the Supreme Court's advice on draftsmanship. 112 Stat. at 3233. Assuming that *Landgraf*'s hypothetical provision would suffice, the absence of similarly absolute language **for** retrospective application in § 101(c) distinguishes SLUSA's applicability provision. *See Lindh*, 521 U.S. at 328 n.4, 117 S.Ct. 2059. Moreover, the suppositional example provided in *Landgraf* shows that express language for a retrospective application of SLUSA to actions filed post-enactment could have effortlessly been added to § 101(c). Therefore, § 101(c) fails as an expression of legislative intent to override the presumption against retrospective application. This court respectfully disagrees with *In Re Bankamerica Corp. Sec. Litig.*, 95 F.Supp.2d 1044, 1046 n.2 (E.D.Mo. 2000), in which that court concluded that § 101(c) prevents retrospective application of SLUSA only as to cases filed pre-enactment. The difference of opinion between this court and

9

the Eastern District of Missouri means only that this court had good reason to certify the jurisdictional question for interlocutory review.

The use of negative inference in *Lindh* to determine the temporal reach of a federal statute does not alter this court's conclusion. In *Lindh*, from the presence of explicit language in only one of two substantively similar and simultaneously enacted chapters in the Antiterrorism and Effective Death Penalty Act, making that chapter applicable to pending cases, the Supreme Court inferred that the other chapter was not meant to apply to pending cases. 521 U.S. at 326-30, 117 S.Ct. 2059. However, the *Lindh* Court used negative inference to find that the statutory provision applied **prospectively**; here, using negative inference to divine congressional intent would result in **retrospective** application. Because prospective application does not carry the long-recognized, powerful potential for unfairness that is inherent in retrospective application, see *Landgraf*, 511 U.S. at 265-73, 114 S.Ct. 1483, the Supreme Court does not require that Congress be express in manifesting its intention that a statute apply prospectively only. Negative inference, therefore, can be an appropriate means for determining congressional intent for **prospective** application;

10

however, this does not mean that negative inference provides a backdoor way around the need for an express legislative command in order to acquire **retrospective** application. See Lindh, 521 U.S. at 325-29, 117 S.Ct. 2059.[1] Thus, from § 101(c), it can easily be inferred that the temporal reach of SLUSA covers actions initiated post-enactment. However, if applying the relevant SLUSA provisions to a particular case would have a retroactive effect, unless there is clear congressional intent to give it that effect, it cannot be applied to pre-enactment conduct.

Having found that there is no clear, controlling statutory language in SLUSA, the court explores whether applying SLUSA to the conduct complained of is impermissible for reasons of constitutional proportion, or of public policy. The Landgraf Court held that a statute would not be allowed to have retroactive effect if applying it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280, 114 S.Ct. 1483. A court should rely on "familiar

---

[1] Indication to the contrary in Mayers v. Reno, 175 F.3d 1289, 1302-1303 (11th Cir. 1999) is **dictum**. The court in Mayers, like the Supreme Court in Lindh, used negative inference to find congressional intent for prospective application only. Furthermore, any persuasiveness of statements in Mayers on this issue is undercut by Martin's subsequent re-affirmation of the requirements and role of the clear statement rule. 527 U.S. at 353-54, 119 S.Ct. 1998.

11

considerations of fair notice, reasonable reliance, and settled expectations." *Id.*, at 270, 114 S.Ct. 1483.

The statute that this court is checking out for possible retroactive effect is 15 U.S.C. § 77p(c), entitled "Removal of covered class actions", which provides: "Any covered class action brought in any State court, involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)." As alluded to *supra* in the discussion of the procedural posture of this case, subsection (b) compels a dismissal of actions based on state law if they allege fraud, deception, or misrepresentation regarding the purchase or sale of securities traded, or authorized to be traded, nationally. 15 U.S.C. § 77p(b). If applicable, § 77p(c) does two things, 1) permits removal of a state action, and 2) sinks the state ship once in the federal harbor. This is the classic sequence of events in ERISA preemption removals. The first consequence, if severed from the second, usually does not raise concerns because a removal opportunity achieved retroactively is not so shocking. *See, e.g., Hughes Aircraft*, 520 U.S. at 950-51, 117 S.Ct. 1871. Whether § 77p(c) does or does not raise such concerns need not be decided,

because SLUSA dictates that each of the two consequences **not** be looked at in isolation from the other. The plain language of SLUSA shows that Congress contemplated that removal would be obtainable only if subsequent dismissal follows. Thus, the two steps were clearly intended to operate in tandem.[2] SLUSA makes ERISA look like a good friend to those who want to pursue their state law remedies in state court. The appropriate level of analysis limits the examination to § 77p(c) itself, not to its conjoined subparts, and the whole provision must be devoid of retroactive effect in order for any portion of it to withstand scrutiny in the present procedural context. If dismissal is not mandated in order to avoid impermissibly placing a retroactive encumbrance on Huff, the entire provision, including its grant of removal jurisdiction, cannot apply. If this is a conundrum, it is one of Congress's making and not one this court made up.

---

[2] Beyond the issue of congressional intent that any removal under § 77p(c) be coupled with dismissal, to determine the retroactive effect of a portion of the provision independently of the other would risk the creation of a questionable state of affairs. If consideration of the applicability of the provision's jurisdictional grant was severed from that of the dismissibility aspect of the provision, and the former was not found to have retroactive effect, but the latter was so found, Huff's complaint, entirely based on state law on its face, would be removable under federal law, but not preempted by federal law. This anomaly is otherwise avoided in SLUSA, which does allow a federal district court to entertain certain actions founded on state law. 15 U.S.C. § 77p(d). If those actions get into federal court via removal, that court must remand. 15 U.S.C. § 77p(d)(4). None of these exceptions apply here.

Subsection 77p(c), by incorporating § 77p(b), requires the dismissal of some, but not all, actions sounding in state law and essentially alleging fraud in connection with the sale of certain securities. Because the preemptive effect is limited to "covered class actions" as defined in 15 U.S.C. § 77p(f)(2)(A), § 77p(c) may be characterized, in a sense, as procedural. However, labeling a rule as "procedural" does not end the inquiry. In *Landgraf*, the Supreme Court "took pains to dispel the 'sugges[tion] that concerns about retroactivity have no application to procedural rules.'" *Martin*, 527 U.S. at 359, 119 S.Ct. 1998 (quoting *Landgraf*, 511 U.S. at 275 n.29, 114 S.Ct. 1483). In keeping with the functional approach, this court must look at the practical procedural restrictions resulting from the application of the term "covered class action". The Act defines it as:

(i) any single lawsuit in which--

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or

14

>    members of the prospective class predominate over any questions affecting only individual persons or members; or
>
>    (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which--
>
>        (I) damages are sought on behalf of more than 50 persons; and
>
>        (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 77p(f)(2)(A). Thus, the question is whether SLUSA, if it denies Huff and its unnamed party-clients the use of the various incarnations of "covered class action" as they seek to recover for injuries caused by defendants' alleged violations of state law, is also denying them procedural rights that cannot be retrospectively yanked from under them without running afoul of the notions of "fair notice", "reasonable reliance", and "settled expectations".

In opposition to Huff's motion to remand, defendants have persuasively argued that the plain language of the definition establishes that the present group action led by Huff falls under § 77p(f)(2)(A)(i)(II). Huff brought suit on a representative basis seeking damages not only for itself but for the "owner-clients" for whom it was purportedly acting as investment manager and attorney-in-fact. Compl. ¶ 14-16. In its submissions, Huff has sought to

15

slip the noose of this statutory provision by asserting that common questions of law or fact do not predominate as between it and the unnamed parties or as among the unnamed parties. On August 17, 2000, this court found this argument unconvincing, and still finds it so. Just because Huff's action may not fit the classic profile of a Rule 23, Fed.R.Civ.P., class action does not mean that the action could not be framed to take advantage of that rule. More to the point, the language of § 77p(f)(2)(A)(i) casts a wider net than Rule 23. The bottom line is that this complaint, as drafted, would be prohibited by SLUSA **if** SLUSA applies.

If SLUSA applies, it will deny Huff and the individuals on whose behalf it purports to act the efficient resolution of claims naturally suited to group action and will expose them to the shortcomings inherent in separate actions. Such exposure runs counter to the concepts of fair notice, reasonable reliance, and settled expectations and would attach new legal consequences to completed events that form the factual basis for Huff's complaint.[3]

---

[3] It is no answer to this point to say that in drafting SLUSA, Congress sought to address what it determined to be, through exercise of its fact-finding powers, an abuse of the established right to proceed as a class by the category of plaintiff into which Huff falls. This court does not dispute the fact that Congress can act prospectively to curb such abuse. That legislative prerogative is not at issue here. The question is whether dispossessing individuals, potential future plaintiffs, of that right after the occurrence of the events giving rise to their cause of action, attaches new legal consequences to those events. Expanding the temporal reach of a statute,

See, e.g., Martin, 527 U.S. at 357-60, 119 S.Ct. 1998 (holding that retrospective application of a limitation on attorneys' fees for postjudgment monitoring services stemming from prison conditions litigation would have retroactive effect).

An additional element of unfairness that underlies unanticipated legal consequences rests on the fact that at the time of Huff's alleged discussions and transactions with defendants, Huff was acting as an investment manager and as attorney-in-fact for unnamed clients who comprise the group which would otherwise have to proceed as individuals. Huff was treated by defendants as the representative of a group. It is not unreasonable, then, for Huff and its clients to have expected that if Huff was misled while operating in its representative capacity, it could bring suit in that same capacity under then existing legal theories to remedy the wrong. If Huff was the conduit for defendants' fraud on its clients, it is hardly fair to take away, post hoc, Huff's right to seek redress for that fraud.

While SLUSA, if it applies, would erase Huff's action under **state** law, it allows for the bringing of **federal** securities fraud

---

whether forward or backward in time, will naturally further the ends sought by the legislation. That unremarkable proposition cannot overcome the presumption against retroactivity. See Landgraf, 511 U.S. at 285-86, 114 S.Ct. 1483.

17

claims in the form of a collective action. The legislative history of SLUSA contains many indications that one of its intended effects is to control securities fraud class actions by leaving federal law as the source of legal rights for plaintiffs who choose to proceed as a class. *See, e.g.*, H.R. CONF. REP. NO. 105-640, at 13 (1998). However, even assuming arguendo that federal law provides substantially the same remedies as state law, if Huff re-fashioned its state law class action as a federal one, many of the claims would be time barred. A meaningful portion of its claims, if re-pled under federal law, would fall under § 10(b) of the Exchange Act and Rule 10b-5, which uses language very similar to 15 U.S.C. § 77p(b). The Supreme Court has held that such claims are subject to a 1-year statute of limitations period after discovery of the conduct constituting the violation, and a 3-year period of repose. *See Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773 (1991). Undoubtedly, under the facts pled by Huff, the operation of these limitations would eliminate a substantial portion of Huff's claims. While it is true that SLUSA does not by its terms dictate this result, especially considering the fact that statutes of limitation are affirmative defenses that must be pled, the practical effect of a retrospective application

18

of SLUSA would be to trim down Huff's case to a virtual nothing. Not taking this eventuality into account when measuring the impact of retrospective application in this case would be holding Huff accountable for its "failure" to bring its state law claims within the periods of repose and limitation applicable to federal claims that are preemptive only if retroactive. This proposition shocks the conscience of this court. Assuming that Huff and its unnamed clients could file substantially the same complaint under federal law, they could do so only by surrendering otherwise viable causes of action. The reasonable expectations they had at the time of the allegedly actionable conduct cannot be reconciled with such a relinquishment of a substantive right.[4]

There is one last rule of statutory construction that strongly militates against applying SLUSA to pre-enactment conduct. It arises from the principles of federalism and comity which recognize that federal courts are courts of limited jurisdiction, so that any

---

[4] The court need not address the serious, but more speculative, argument concerning the combined effect of § 77p(f)(2)(A)(i) and (f)(2)(A)(ii) on the possibility of Huff and its clients receiving any hearing whatsoever on the merits of their state claims. Even if Huff and its clients were to escape the grasp of § 77p(f)(2)(A)(i) by filing a non-representative action, or actions, of less than 50 plaintiffs and subsequently were able to elude the grouping possibility anticipated in § 77p(f)(2)(A)(ii), they would still have been denied the procedural right to pursue effective relief in the form of a collective action. Because the court finds that § 77p(f)(2)(A)(i)'s limitations alone would have a retroactive effect, there is no need to determine whether retrospective application of the "covered class action" term would lead to an impermissible result in other ways.

statute upon which a removal from state court can be based, must be construed against federal and in favor of state jurisdiction. When Congress is ambiguous on the question of the retroactivity of a preemptive federal statute, and when removability depends upon a retroactive application of that statute, the ambiguity must be resolved against removability and thus against retroactivity. This is the only way to recognize the primacy of the state courts as courts of first instance.

For the foregoing reasons, separate and in combination, this court cannot and will not grant defendants' motion to dismiss. To do so would constitute a dispositive ruling, something this court cannot do when it lacks subject matter jurisdiction because 15 U.S.C. § 77p(c) has no retrospective application. The only recourse is to send the case back to the court of competent jurisdiction from whence it came.

### Conclusion

The action will be remanded. All pending motions not carried with the order of remand will be moot. A separate and appropriate order will be entered.

DONE this 2nd day of May 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE